UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:17-CV-00147-JRW-LLK

SPECIALTY AUTO PARTS USA, INC.                                    PLAINTIFF

v.

HOLLEY PERFORMANCE PRODUCTS, INC.                                 DEFENDANT

## OPINION AND ORDER

Chief Judge Greg N. Stivers referred this matter to U.S. Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, resolution of all non-dispositive matters, including discovery issues, and to conduct a settlement conference at any time.  [DN 36].  Chief Judge Stivers then recused from this matter and reassigned it to Senior Judge Joseph H. McKinley, Jr. [DN 43].

Senior Judge McKinley referred this matter to Judge King for determination of non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A), for a report and recommendation on dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B), and to conduct any necessary hearings for the resolution of those matters.  [DN 72].

This matter was then reassigned from Senior Judge McKinley to Judge Justin R. Walker. [DN 79].  Judge Walker rescinded a portion of the referral to Judge King.  [DN 81].  This matter is no longer referred to Judge King for the purpose of conducting hearings and proposing findings of fact and recommendations for disposition; however, Judge King maintains authority to determine all pretrial matters under 28 U.S.C. § 636(b)(1)(A) and to conduct a settlement conference at any time.  *Id.*

Following a telephonic status conference on February 3, 2020, the Court granted Defendant Holley Performance Products, Inc. ("Holley"), leave to file a motion for protective order.  [DN

87].   On February 7, 2020, Holley filed its Motion for Protective Order asking for certain information and documents sought by Plaintiff, Specialty Auto Parts USA, Inc. ("Specialty"), to be protected and designated as "Attorneys' Eyes Only."  [DN 88].  Specialty filed its response in opposition on February 12, 2020.  [DN 90].  Holley then filed its reply.  [DN 91].  Holley's Motion for Protective Order has now been fully briefed and is ripe for adjudication.

For the reasons below, Holley's Motion for Protective Order is GRANTED IN PART AND DENIED IN PART.  The Court grants the Motion to the extent it seeks protection for certain documents and requests those documents be designated as "Attorneys' Eyes Only" ("AEO"), denies the Motion regarding the specific procedure Holley seeks for sealing documents, and denies the Motion as to the specific language Holley seeks regarding remedies for breach of the Order.

## BACKGROUND

This matter is the most recent iteration of an on-and-off dispute between two competitors, Plaintiff, Specialty Auto Parts USA, Inc., and Defendant, Holley Performance Products, Inc.  Both companies create, produce, and sell carburetors and other related products.  In this current matter, Specialty alleges that Holley breached two agreements: (1) a protective order agreement related to a third-party subpoena Holley issued to Specialty in the case of *Holley Performance products, Inc. v. Quick Fuel Technology, Inc.*, No. 1:07-cv-00185 (W.D. Ky. 2007); and (2) a 2001 settlement agreement in the case of *Holley Performance Products, Inc. v. Specialty Auto Parts USA, Inc.*, No. 1:00-cv-00186 (W.D. Ky. 2000).

Of relevance to this instant motion is the 2001 settlement agreement.  That settlement agreement resolved a suit brought by Holley in which it alleged that Specialty "misappropriated the trade dress of Holley's carburetor main bodies."  [DN 1-1 at 17].  As part of the settlement

agreement, Holley agreed to certain design specifications for its HP line of carburetors. *Id.* at 22-23.

In 2012, Specialty moved to reopen the underlying litigation, arguing that Holley violated various provisions of the settlement agreement, including the design specifications. [DN 5-2 at 582]. In his Order finding that Holley had violated those provisions, Judge McKinley suggested that Holley could have avoided violating the design specification provisions with its Aluminum Ultra HP by, amongst other things, "choosing a new name for the main bodies and carburetors that did not include 'HP' in the name." *Id.* at 583 (internal quotations omitted).

In response to that suggestion, Holley changed the name of its Aluminum Ultra HP carburetor to Ultra XP. *Id.* at 588-589. This created a new XP (Xtreme Performance) line of products, which replaced the Ultra HP main bodies and allowed Holley to avoid the settlement agreement's design specifications. *Id.* at 588-589.

Now, Specialty brings, *inter alia*, breach of contract claims for the alleged violations of the settlement agreement. Specialty sent written discovery requests to Holley, which included requests for information and documents showing: "data sufficient to show the names of every customer that purchased an Aluminum Ultra HP carburetor or main body from Holley; Holley's sales and gross/net profits related to the Aluminum Ultra HP carburetors and main bodies; Holley's strategies for marketing the Aluminum Ultra HP carburetor and main body; and all design variations considered with respect to the Aluminum Ultra HP main body." [DN 88 at 3976].

While Holley questions the relevance of the discovery sought, Holley does not object to its production if there is "an appropriate protective order" in place. *Id.* at 3976. Holley specifically wants certain documents to be protected and designated as "Attorneys' Eyes Only" (hereinafter "AEO"), thereby preventing its competitor, Specialty, but not Specialty's attorneys, from obtaining

the information and documents produced.  Holley requests that the protective order apply and be limited to the following categories of information and documents: (1) sales records; (2) documents identifying fixed and variable costs; (3) documents identifying gross and net profit margins; (4) documents identifying pricing; (5) documents identifying customers; (6) documents relating to analyses, strategies, or planning regarding marketing, positioning, or sales; (7) documents relating to business decisions to manufacture the products; and (8) documents showing all design variations.  [DN 91-1].

Specialty objects to the protective order, arguing that: the proposed protective order contains ambiguities and would not provide the relief sought; the categories of documents do not clearly define the documents subject to the protective order; Holley has not met its burden in demonstrating a clearly defined and serious injury for each category of documents; Holley has not demonstrated that AEO treatment is necessary; and that Holley's proposed sealing process is inappropriate.  [DN 90].

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure affords the Court with broad discretion to grant or deny protective orders.  *Parker & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).  This Court, however, has increasingly scrutinized motions for protective orders that do not make the necessary showing of good cause required by the Rules of Civil Procedure and case authority.  *See Bussell v. Elizabethtown Independent School Dist.*, 3:17-cv-00605-GNS (W.D. Ky. Oct. 23, 2018) (discussing why the Court will enter the second proposed agreed protective order because it develops why a protective order is necessary) (Pacer); *see also Wellmeyer v. Experian Info. Sols.*, 3:18-cv-94-RGJ (W.D. Ky. May 30, 2018) (Pacer); *Middleton v. Selectrucks of America, LLC*, 3:17-cv-602-RGJ (W.D. Ky. Sept. 21, 2018) (Pacer); *Mitcham v.*

*Intrepid U.S.A., Inc.*, 3:17-cv-00703-CHB (W.D. Ky. Oct. 1, 2018) (Pacer); *Roberson v. KentuckyOne Health, Inc.*, 3:18-cv-00183-CRS-RSE (Aug. 29, 2018) (Pacer); *Savidge v. Pharm-Save, Inc.*, 3:17-cv-000186-CHB (W.D. Ky. July 9, 2018) (Pacer); *Effinger v. GLA Collection Co.*, 3:17-cv-000750-DJH (W.D. Ky. March 28, 2018) (Pacer); *Fleming v. Barnes*, 3:16-cv-264-JHM (W.D. Ky. Feb. 27, 2017) (Pacer).

Under Federal Rule of Civil Procedure 26(c)(1)(G), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way…." Good cause exists when the party moving for the protective order "articulate[s] specific facts showing 'clearly defined and serious injury' resulting from the discovery sought…." *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).

"The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. May 24, 2011); *see also In re Skelaxin Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013) ("To show good cause, the moving party must articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought; mere conclusory statements will not be sufficient.").

Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to show substantial justification for withholding information from the public. *See Williams*, 2018 WL 989546, at *2; *see also*, *Proctor & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) ("While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and is circumscribed by a long-established tradition which values

public access to court proceedings."); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying public access to the proceedings.").

For example, in *Bussell* the parties submitted an Agreed Protective Order for the protection of alleged confidential and private information, but failed to explain why the Order was necessary. *Bussell v. Elizabethtown Independent School Dist.*, 3:17-cv-00605, DN 27 (W.D. Ky. Aug. 29, 2018). The Court denied the motion without prejudice and specifically stated that the party seeking a protective order should set out the reasons why a protective order is necessary. *Id.* at DN 28. The parties then filed a new motion for protective order, which the Court granted, noting that the parties explained that the materials they sought to be protected were nude or seminude photographs and that dissemination of the images was sensitive in nature, may constitute additional crimes, and could potentially adversely impact ongoing criminal proceedings. *Id.* at DN 33.

## DISCUSSION

In analyzing Holley's Motion for Protective Order, the Court must determine whether there is good cause to enter a protective order, whether Holley has demonstrated the heightened requirements for AEO designation, and whether to adopt Holley's proposed process for sealing documents.

### I.    Good Cause Requirement

As an initial matter, this Court must determine whether good cause has been shown for the issuance of any protective order, let alone one with a heightened AEO designation.

Here, Specialty contends there is no good cause for a protective order. Specifically, it argues: the proposed protective order contains ambiguities and would not provide the relief sought; the proposed protective order's categories of documents do not clearly define the documents that

fall within its scope; and that Holley has not met its burden in demonstrating a clearly defined and serious injury for each category of documents.  [DN 90].  This Court disagrees.

### A. *Holley's revised proposed protective order is not ambiguous and would provide the relief sought.*

Specialty claims there are ambiguities in Holley's proposed protective order, [DN 88-1]; however, to the extent there were any such ambiguities, Holley remedied them by filing a revised protective order with its Reply.  [DN 91 at 4036, DN 91-1].  It is apparent to this Court that the ambiguities raised by Specialty were merely scrivener's errors that could have easily been corrected had Specialty simply relayed those specific concerns to Holley prior to the filing of this instant motion.

### B. *The categories of documents subject to Holley's proposed protective order are clearly defined.*

This Court finds that the categories of documents the proposed protective order[1] seeks to protect are clearly defined.

Holley's proposed protective order, if entered, would apply and be limited to eight categories of information and documents: (1) sales records; (2) documents identifying fixed and variable costs; (3) documents identifying gross and net profit margins; (4) documents identifying pricing; (5) documents identifying customers; (6) documents relating to analyses, strategies, or planning regarding marketing, positioning, or sales; (7) documents relating to business decisions to manufacture the products; and (8) documents showing all design variations.  [DN 91-1].

In making the argument that these categories are overbroad, Specialty relies upon *Maker's Mark Distiller v. Spalding Grp. Inc.*, a case in which this Court recently rejected a proposed agreed protective order.  Case No. 3:19-cv-00014-GNS-LLK, 2020 U.S. Dist. LEXIS 5314 (W.D. Ky.

---

[1] For simplification purposes, this Court will hereinafter refer to Holley's revised proposed protective order, [DN 91-1], as the "proposed protective order."

Jan. 10, 2020). That proposed agreed protective order "outlined generally what *could* be considered confidential, such as 'documents and information pertaining to private and confidential personal information, as well as financial, competitive, personnel, product development, and other kinds of commercially sensitive and/or proprietary information...'" *Id.* at *5.

*Marker's Mark*, however, is not applicable as the language in that protective order is markedly different from that used here. In *Maker's Mark*, the proposed agreed protective order's categories were so vague and broad that almost any document or piece of information could arguably fall within its ambit.

In contrast, Holley's proposed protective order identifies specific categories of information and documents that would be subject to the order. Moreover, unlike the protective order in *Maker's Mark*, Holley's proposed protective order states that its scope is limited to those enumerated categories.

Given their concise description and scope, this Court finds that the categories in Holley's proposed protective order are clearly defined.

### C. *Holley has demonstrated a clearly defined and serious injury.*

The Court finds that Holley has met its burden in demonstrating that it would suffer a clearly defined and serious injury should the documents and information it seeks to protect be disclosed. Specialty, however, contends that burden has not been met with respect to each category of documents to be covered by the proposed protective order. [DN 90 at 4027-4030].

In the context of trade secrets and confidential information, courts have looked as six different factors to determine whether there is a need to protect that information:

(1) the extent to which the information is known outside of [the] business;

(2) the extent to which it is known by employees and others involved in [the] business;

(3) the extent of measures taken . . . to guard the secrecy of the information;

(4) the value of the information to [the business] to [its] competitors;

(5) the amount of effort or money expended . . . in developing the information;

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Williams v. Baptist Healthcare Sys.*, No. 3:16-CV-00236-CRS, 2018 WL 989546, at *2 (W.D. Ky. Feb. 20, 2018) (citing *Nash-Finch Co. and Super Food Servs., Inc. v. Casey's Foods, Inc.*, 2016 WL 737903, at *2 (E.D. Ky. Feb. 23, 2016) (citing *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio Jan. 17, 2014))).

Here, Holley has addressed each of the six factors by attaching as an exhibit the sworn testimony of its Chief Executive Officer, Thomas W. Tomlinson.  [DN 88-5].  The Court will analyze each of those six factors in order and will conclude that all six weigh in Holley's favor.

First, the Court must analyze the extent to which the information is known outside of Holley's business.  Holley's CEO testified that Holley is a privately held company that does not publish the information it now seeks to protect.  *Id.* at 4019.  Holley also has its employees enter confidentiality agreements that limit the employees' use and disclosure of Holley's trade secrets, both during and after their employment with Holley.  *Id.* at 4019.  Accordingly, it can be said that information is not widely, if at all, known outside of Holley.  The first factor, therefore, weighs heavily in Holley's favor.

Second, the Court must look at the extent to which the information is known by Holley's employees and others involved in its business.  Holley's CEO testified that the information sought is not known by all of Holley's employees.  Specifically, he testified that Holley's information is password protected in its computer systems and employees only have access to information they

need to perform their specific work duties.  *Id.* 4019.  For example, Mr. Tomlinson explained that an employee in accounting would have access to Holley's cost and profit information, but would not have access to engineering design data.  *Id.* 4020.  Holley also limits physical access to its trade secret information by keeping that information in secured cabinets, or rooms, and requiring key cards for the areas where such information is stored.  *Id.* at 4020.  It is clear from Mr. Tomlinson's testimony that access to Holley's trade secret information is limited even amongst its employees.  This second factor weighs heavily in Holley's favor.

Third, the Court must analyze the extent of any measures taken to guard the information's secrecy.  Given the facts set out above in discussing employees' access to the information, it is clear to this Court that Holley takes significant measures to keep its information secure.  Holley's electronic information is password protected and accessible only to those employees who jobs require such access.  Hard copies of the information are stored in secure cabinets and rooms that require key cards.  The third factor weighs heavily in Holley's favor.

Fourth, the Court must consider the value of the information to Holley and to its competitors.  Holley's CEO testified that based on Specialty's documents requests, "it appears that Specialty is trying to gain access to much, if not all, of the trade secret information that it would need to unfairly compete with Holley."  *Id.* at 4020.   Mr. Tomlinson explained that if Holley's competitors, e.g. Specialty, had access to its pricing information, it could severely hurt Holley's ability to compete with other carburetor manufacturers.  *Id.* at 4020.  If its competitors had access to Holley's customer lists, those competitors could specifically target Holley's customers.  *Id.* at 4020.  And if Holley's competitors had access to product design, performance, and appearance information, competitors could copy those designs, thereby hurting sales of Holley's products.  *Id.* at 4020.

In arguing that these documents should not be protected, Specialty cites *Williams v. Baptist Healthcare System, Inc.*, 2018 WL 989546 (W.D. Ky. Feb. 20, 2018), for the proposition that "[r]outine business material that do not provide a financial or business advantage do not fall within these confines" of documents that should be protected. *Williams*, 2018 WL 989546 at *2 (citing *Mitchell v. Home Depot, USA*, 2012 WL 2192279 (W.D. Ky. June 14, 2012)). Arguably, that type of routine business material would not have much, if any, value.

Here, Holley's CEO testified that the material sought, whether routine or not, would provide Holley's competitors, including Specialty, with a competitive advantage, thus making the above proposition from *Williams* inapplicable.[2] Specialty, however, contends this testimony is insufficient, stating, "numerous courts have explained that 'a conclusory statement that disclosure of the documents would provide competitors with an advantage' is insufficient." DN 90 at 4028 (quoting *Williams,* 2018 WL 989546 at *3).

It is worth noting that *Williams v. Baptist Health System* is markedly different than the case at hand. In *Williams*, Baptist Healthcare Lexington ("BHL") was sued by an individual it had turned away from care. *Williams,* 2018 WL 989546 at *1. BHL then requested a protective order over its policies and procedures. In support of this request, BHL provided an affidavit indicating that BHL's policies and procedures were unique to its organization and, if disclosed, new or existing hospitals could use those documents to improve their performance. *Id.* at *4. In denying the motion for a protective order, the court found that BHL had failed to demonstrate how the

---

[2] The Court will note that the affidavit of Holley's CEO addresses how disclosure of almost all types of information and documents that Holley seeks to protect would cause Holley harm and give its competitors a competitive advantage. That affidavit, however, did not specifically address or include any support for the position that the disclosure of documents and information regarding "analyses, strategies, or planning regarding marketing, positioning, or sales" would be harmful. It does seem clear to this Court, especially given the cumulative factors analyzed, that should Holley's marketing information be given to a competitor, Holley would be severely disadvantaged from that disclosure.

policies and procedures were confidential, had failed to show the documents were unique, and the court found that the alleged harm from disclosure was too attenuated. *Id.* at *4.

In contrast, here Holley's affidavit demonstrates that the documents and information sought to be protected are confidential in nature and it specifically addresses how a competitor could use the different categories of documents and information to create a competitive advantage over Holley.

The alleged harm to Holley from disclosure is also not attenuated. Unlike in *Williams* where there was no indication that a competitor would have obtained BHL's policies and procedures if disclosed without a protective order, here we know that a competitor would receive this information absent a protective order because without the protective order, Holley would have to produce the documents to Specialty, one of its direct competitors. Furthermore, unlike *Williams* where the policies and procedures *could* have helped a competitor improve, here Holley very likely *would* be hurt competitively in the carburetor market if a direct competitor gains access to its sales, marketing, and design information. Since a direct competitor would receive the information and documents at issue and that disclosure would likely hurt Holley competitively, the harm is not attenuated

One of Specialty's main arguments in claiming that Holley would not be harmed by disclosure goes directly to this factor of analyzing to what extent the information and documents have value to Holley and its competitors. Specialty argues that the documents and information it seeks related to Holley's Aluminum Ultra HP carburetors "are at least six years old, and relate to a product that is no longer in distribution." DN 90 at 4023-4024. Specialty goes on to argue that Holley could not suffer a clearly defined and serious injury were those old documents now to be disclosed. *Id.* at 4029. The Court does not find this argument to be persuasive.

While Holley may no longer produce the Aluminum Ultra HP carburetor, it is inaccurate to claim that it would not harm Holley to disclose documents related to that product.  In the underlying litigation, Judge McKinley suggested that Holley could have avoided some issues with the 2001 settlement agreement's design specifications for Holley's HP product line by simply "choosing a new name for the main bodies and carburetors that did not include 'HP' in the name." DN 5-2 at 583 (internal quotations omitted).  Holley then did just that – it changed the name of its Aluminum Ultra HP carburetor to Aluminum Ultra XP, thereby creating a new XP line of products. While the HP line of products then ceased to exist, the XP products carried on.

Given that Holley's XP products are nearly identical to Holley's old HP products, disclosure of documents and information related to the HP product line could still cause a clearly defined and serious injury to Holley.  It stands to reason that information regarding a previous iteration of a current design could provide great insight into the current product.  Here, documents and information on the HP products would give competitors significant insight into the XP line. This information is, therefore, highly valuable to both Holley and its competitors even though the HP products are no longer in production.  Any argument to the contrary is specious, at best.

For the foregoing reasons, this Court finds that the fourth factor, which looks at the value of the information to Holley and to its competitors, weighs heavily in Holley's favor.

Fifth, the Court must look at the amount of effort or money expended in developing the information Holley seeks to protect.  Holley sets out that it has expended significant money in developing the information, with Holley's CEO estimating that, given the number of employees involved, it cost Holley tens of millions of dollars over the past ten years to develop its trade secrets.  *Id.* at 4019.  While Holley did not provide an exact number, the Court finds that a

significant amount of money was expended to develop the information Holley seeks to protect, which weighs in favor of a protective order.

Finally, the sixth factor requires the Court to look at the ease or difficulty with which the information could be properly acquired or duplicated by others. Given the efforts Holley has taken to conceal and secure this information, it would be quite difficult for others to acquire or duplicate it. This final factor weighs in Holley's favor as well.

Here, all six factors weigh in Holley's favor. The cumulative effects of this analysis decisively demonstrate that there would be a clearly defined and serious injury should the documents and information Holley seeks to protect be disclosed.

Specialty's argument that Holley's proposed protective order does not satisfy the good cause requirement is not well taken. This Court finds that Holley's proposed protective order is not ambiguous, it provides the relief requested, and the categories of information and documents within its scope are clear. Furthermore, the Court finds that Holley demonstrated that a clearly defined and serious injury would occur should that information and documents be disclosed. Accordingly, this Court finds there is good cause for the entry of a protective order.

## II.     Attorneys' Eyes Only ("AEO") Designation

Given that this Court finds there is good cause to enter a protective order, it must now determine whether documents and information that fall within the scope of the protective order should be subject to enhanced protection through an AEO designation, as requested by Holley.

An AEO designation, which limits review of documents to only the parties' attorneys and experts, is considered to be "the most restrictive (and thus least often justified) tier of discovery." *Acuity Brands Lighting, Inc. v. Bickley*, 2015 WL 12976102 at *4 (E.D. Ky. Sept. 4, 2015) (citing *Election Sys. & Software, LLC v. RBM Consulting, LLC*, 2015 WL 1321440 at *5 (D. Neb. Mar.

24, 2015); *Ragland v. Blue Cross Blue Shield of N. Dakota*, 2013 WL 3776495, at *1-*2 (D.N.D. June 25, 2013)).

While Holley is being asked to disclose trade secrets and confidential information, "[t]he mere presence of 'trade secrets' does not automatically entitle the producing party to an AEO [P]rotective [O]rder.  The burden remains on the producing party to show that AEO protection is warranted." *Stout*, 298 F.R.D. at 534-35 (quoting *Penn, LLC v. Prosper Bus. Dev. Corp.*, 2012 WL 5948363 at *4 (S.D. Ohio Nov. 28, 2012)) (internal quotations omitted).  That party must be able to demonstrate a "likely concrete harm from opponent access to highly sensitive information." *Acuity Brands*, 2015 WL 12976102 at *4.  "In a 'business context,' a party must show 'specific demonstrations of fact, supported where possible by affidavits and concrete examples.'" *Ohio Harness Horseman's Assoc., Inc. v. Northfield Park Associates, LLC*, 2016 WL 8608459 at *3 (N.D. Ohio Nov. 30, 2016) (quoting *Penn, LLC*, 2012 WL 5948363 at *4).  Typically, AEO designation is only permitted "when especially sensitive information is at issue or the information is to be provided to a competitor."  *Ohio Harness Horseman's Assoc., Inc.*, 2016 WL 8608459 at *3 (quoting *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745 at *4 (W.D. Tenn. March 27, 2008)) (internal quotations omitted).

In determining whether an AEO protective order was appropriate, the *Nash-Finch* Court, after having reviewed the six factors discussed earlier, undertook a balancing test, analyzing "'the needs of the party seeking the information against the potential harm resulting from disclosure.'" *Nash-Finch*, 2016 WL 737903 at *2 (quoting *Stout*, 298 F.R.D. at 535).  There, the U.S. Magistrate Judge determined that the needs of the party seeking the information outweighed the potential harm from disclosure.  *Id.*  While the District Judge acknowledged that it was a "close call," it was

determined that the Magistrate Judge's decision was not clearly erroneous or contrary to law and, therefore, would not be overturned.  *Id.* at *4.

Here, Specialty claims that it cannot effectively evaluate damages in this matter if only its attorneys, and not Specialty employees, can see information regarding the sale of Holley's Ultra HP Carburetor.  [DN 90 at 4031].  Specialty argues that settlement is "almost impossible" if it cannot view that information.  *Id*. at 4031.  Furthermore, Specialty contends that the information and documents could be protected in a less restrictive manner than an AEO designation, suggesting a "Confidential" designation that allows Specialty to view the documents but prohibits the use of the documents and information outside of this lawsuit.  *Id.* at 4031.

Holley contends that disclosure of the information and documents to Specialty, even under a "confidential" designation, would "severely impair Holley's ability to compete in the carburetor space."  [DN 91 at 4040].  The affidavit provided by Holley's CEO details how the disclosure of this information and documents would cause Holley competitive harm.  Furthermore, Holley claims these concerns are "well-founded given Specialty's history of using Holley's pricing information to its disadvantage."  *Id*. at 4040.

Holley and Specialty are direct competitors operating within the carburetor marketplace. The level of competition is certainly evidenced by the two decades of litigation between them just before this Court.  Contrary to Specialty's position, the Court finds that there is real potential harm to Holley should Specialty be permitted to view Holley's pricing, sales, marketing, customer, and design information.  At the same time, this Court is cognizant of the difficulties an AEO designation would cause Specialty in evaluating its case.  Those are not insignificant hurdles.

While Specialty suggests that a "confidential" designation is a viable, less restrictive solution, it would be naïve to believe that information gained by Specialty about Holley's trade

secrets would not, to some degree, inform Specialty's own business decisions, whether intentional or not.   Any violation of a "confidential" designation that bars the use of information and documents outside of this litigation could be incredibly difficult to prove and, thus, not easily remedied.

In balancing the needs of Specialty against the harm Holley could incur should the documents and information be disclosed, the Court is also mindful of two important facts.  First, Rule 26 contains an implicit duty of good faith that is violated if a party grossly abuses the AEO designation and improperly applies it "in a blanket, indiscriminate manner."  *Acuity Brands Lighting*, 2016 WL 12976102 at *2 (citing *In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. 2006)).  The 6th Circuit has recognized the Court's implicit power to sanction bad-faith conduct. *Metz v. Unizan Bank*, 655 F.3d 485, 492 (6th Cir. 2011).  Second, if a document is improperly designated as AEO, there is a mechanism within the proposed protective order to challenge that designation.  With those two facts in mind, this Court fully expects the parties to act in good faith when designating a document as AEO and, in the event there is a disagreement over such a designation, this Court still has the ability to intervene.

This Court finds that the potential harm to Holley outweighs the needs of Specialty. Accordingly, the documents falling within the ambit of the protective order shall be subject to an AEO designation.  Such designation is to be applied to documents and information in accordance with the good-faith duties implicit in Rule 26.

### III.    Sealing

Finally, the Court must determine what provision, if any, to include in the protective order on the issue of sealing AEO designated documents.  The Court declines to adopt Holley's proposed procedure as it is ambiguous and places the burden of sealing a document on a party who may not

believe it should be sealed.  Instead, for the following reasons, Specialty's proposed procedure shall be adopted as it places the burden of sealing on the party that desires sealing to occur.

Local Rule 5.7(c) addresses filing documents under seal:

> (c) **Specific Authority or Motion Required; Protective Orders**.  Absent a federal statute or federal rule of procedure, local rule, or standing order of this court, a party seeking to file a sealed document must electronically file a motion for leave to seal. The motion must state why sealing is required and must establish that the document sought to be filed under seal is entitled to protection from public disclosure. Reference to a stipulation that allows a party to designate certain documents as confidential is not sufficient grounds to establish that a document, or portions thereof, warrants filing under seal.  LR 5.7(c).

In *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), the Sixth Circuit addressed the requirements that must be met by both the proponents of an order to seal and the court ruling on that motion.  There, the Sixth Circuit clarified that the standard for sealing documents that the parties have chosen to make part of the judicial record is "vastly more demanding" than the standard for protective orders for documents the parties exchange with each other during discovery.  *Id.* at 307.  That the documents are covered by a "mere protective order" or have been designated as confidential by a party is not sufficient reason to seal them from the public after the parties have placed the documents in the judicial record.  *Id.*  Once parties place documents in the judicial record, they have crossed a line between the discovery stage and the adjudicative stage.  *Id.* at 305.

The Sixth Circuit also stated that at the adjudicative stage "the public has a strong interest" in access to assess a court's decisions and the information on which the court relied in making that decision.  *Id.*  Due to the "strong presumption in favor of openness…[o]nly the most compelling of reasons can justify" sealing documents and "the seal must be narrowly tailored to serve that reason."  *Id.*  Therefore, the party seeking to seal documents must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations."  *Id.* at 305-06.  The

court must then explain the basis for sealing each document and must articulate "specific findings and conclusions" as to why the interest in sealing is compelling, the interest in public access less so, and why the seal is as narrow as possible.  *Id.* at 306.

In its proposed protective order, Holley sets out that documents designated as AEO "may only be filed in a sealed envelope upon the granting of a motion by the Court."  [DN 91-1 at 4047]. It goes on to require that:

> 12.  A party seeking to file a sealed document must electronically file a motion for leave to file under seal.  The motion must state why sealing is required and must establish that the document sought to be filed under seal is entitled to protection from public disclosure.  The motion must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.  *Id.* at 4047.

While not raised by Specialty, this procedure is ambiguous as written.  Per Holley's proposed order, a party wanting to file an already sealed document must seek leave to file it under seal.  This would be redundant.  While one could assume that Holley meant for this to state, "A party seeking to file a document with the 'Attorneys' Eyes Only' designation," that is not what Holley submitted in either version of the proposed order.  As Holley's proposed language is redundant and ambiguous, the Court declines to adopt it.

Even if Holley had written that this procedure applied for the filing of AEO documents, the procedure as outlined by Holley would still be improper in this instance.   The proposed protective order only allows AEO designated documents to be filed if the Court permits them to be filed under seal.  A party's ability to use documents in support of its claims or defenses should not be predicated on whether this Court decides those documents meet the heightened standard for filing under seal.

Furthermore, as Specialty points out, Holley's procedure would require Specialty to file a motion to seal documents Holley produced if Specialty wished to use them prior to trial.  [DN 90

at 4031-32]. While this Court has entered protective orders in other cases with similar requirements, such a procedure is not appropriate in this specific case.

While not raised, Holley's proposed procedure also raises Rule 11 concerns. Specialty and its attorneys may not believe there is a legitimate basis for sealing AEO documents it wishes to file in the judicial record; yet, under Holley's procedure, Specialty's attorneys would be forced to either file a motion to seal they may believe is baseless, thereby violating Rule 11, or not file documents that could support their client's case. Given these concerns, the Court cannot adopt Holley's sealing procedure in this case.

Specialty has proposed an alternative procedure by which AEO designated documents shall initially be filed under a temporary seal. *Id.* at 4032. The producing party would then be given a reasonable amount of time thereafter to file a motion to seal. *Id.* at 4032. Absent a motion, the documents automatically become unsealed. *Id. at* 4032. Holley disagrees with this procedure, claiming that "[t]his suggestion, which shifts the burden onto Holley to monitor documents filed by Specialty or risk irreparable injury to its business, once again illuminates Specialty's desire to obtain Holley's documents with limited protections so it can use those documents to Holley's disadvantage." [DN 91 at 4041].

Holley's argument on this issue is not well taken. Holley complains that Specialty's proposal would force it to monitor documents filed by Specialty; however, Holley should be doing that anyway. This Court fully expects the parties to be diligently monitoring all filings in this case.

While the Court could simply decline to adopt both parties' proposals and not include any language regarding sealing in its order, this Court is cognizant that a bell once rung cannot be unrung. Similarly, were a party to file AEO documents without any sealing provision in place, those documents would be publicly available at that time. If the documents should legitimately be

under seal, it would be impossible to remedy any potential damage Holley could suffer from having the documents available to the public before this Court could make any decision regarding sealing. As such, this Court adopts Specialty's proposed procedure and will incorporate it into the Order below.

## CONCLUSION

For the foregoing reasons, Holley's Motion for Protective Order is GRANTED IN PART AND DENIED IN PART. The Court grants the Motion to the extent it seeks protection for certain documents and requests those documents be designated as "Attorneys' Eyes Only" ("AEO"), denies the Motion regarding the procedure Holley seeks for sealing documents, and denies the Motion as to the specific language Holley seeks regarding remedies for breach of the Order. The Court declines to enter either of Holley's proposed protective orders. Instead, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Holley's Motion for Protective Order, [DN 88], is **GRANTED IN PART AND DENIED IN PART**. The parties shall be subject to the following protective order:

2. "Attorneys' Eyes Only" information is information that is not generally available to the public that contains sensitive business or proprietary information, the disclosure of which to a competitor would reasonably likely lead to competitive harm. "Attorneys' Eyes Only" information or documents in this case are limited to: (i) sales records; (ii) documents identifying fixed and variable costs; (iii) documents identifying gross and net profit margins; (iv) documents identifying pricing; (v) documents identifying customers; (vi) documents relating to analyses, strategies, or planning regarding marketing, positioning, or sales; (vii) documents relating to business decisions to manufacture the products; and (viii) documents showing all design variations.

3.  Any party to this litigation who receives properly issued written discovery or a non-party to this litigation who receives a lawfully issued subpoena through or as part of this action may reasonably designate documents that contain "Attorneys' Eyes Only" information, as defined in Paragraph 2, by placing the designation "Attorneys' Eyes Only" on the face of each page of the document containing such information.  "Attorneys' Eyes Only" material shall be used only for the purposes of this action and not for any other purpose whatsoever and shall not, without prior written consent of the Producing Party or upon order prior order of this Court obtained after notice to all parties, be provided to, shown to, made available to, or communicated to anyone except for the persons described in Paragraph 8 below.

4.  A non-party to this action responding to a subpoena issued in this action is deemed a "Producing Party" for all purposes under this Order and may invoke the protections and procedures of this order if such non-party was a party to the action.

5.  Any party or non-party who receives properly issued written discovery or a lawfully issued subpoena through or as part of this action may designate information disclosed during a deposition or produced through written discovery, by any party or non-party, as "Attorneys' Eyes Only" by so indicating in said responses or on the record.  In addition, within thirty (30) days after receipt of said responses or of the deposition transcript for which the designation is proposed, any party or non-party may propose that specific pages of the transcript and/or specific responses be treated as "Attorneys' Eyes Only."  Any other party may object to such proposal in writing or on the record.  Upon such objection, the parties shall follow the procedures described in Paragraph 7 below.

6.  The inadvertent or unintentional failure by any Producing Party to designate specific documents as "Attorneys' Eyes Only" shall not be deemed a waiver in whole or in part of

a party's claim of confidentiality as to such documents or materials.  Upon notice to all other parties of such failure to designate, all parties shall cooperate to restore the confidentiality of the inadvertently disclosed information, without prejudice.

7.  If any party contends that any material designated "Attorneys' Eyes Only" is not entitled to confidential treatment, such party may, at any time, give written notice to all other parties and the Producing Party of such dispute in sufficient detail to identify the basis for such dispute.  The parties, including any Producing Party, shall attempt in good faith to resolve by agreement the question of whether the documents or other materials are properly designated.  If the parties, including any Producing Party, are unable to agree as to whether the designated items are properly designated as "Attorneys' Eyes Only," counsel for the party challenging the designation shall contact the Court to request a telephonic status conference with Judge King to discuss whether leave should be granted for the party challenging the designation to file an appropriate motion with the Court.  Until a resolution of the dispute is achieved either through consent or by the Court, all parties, including any Producing Party, shall treat the documents or information as "Attorneys' Eyes Only" and subject to the terms of this Order.

8.  Except with the prior written consent of the other parties, including any Producing Party, or upon prior order of this Court obtained after notice to all parties, "Attorneys' Eyes Only" information shall not be disclosed to any person other than: (a) counsel for the respective parties, including any Producing Party, to this litigation, including in-house counsel and co-counsel retained for this litigation; (b) employees of such counsel; (c) consultants or expert witnesses retained for the prosecution or defense of this litigation; (d) the Court,

court personnel, and court reporters; and (e) any other persons as the parties to this litigation agree to in writing or as the Court orders.

9. Each party, including any Producing Party, undertakes the obligation/burden to disclose to its representatives, agents, employees, consultants, and experts the contents of this Order and to require compliance with the terms of this Order.

10. "Attorneys' Eyes Only" information may be disclosed to a non-party witness only in a deposition at which the Producing Party is represented or has been given notice that "Attorneys' Eyes Only" documents produced by it may be used.  At the request of the Producing Party, the portion of the deposition transcript involving the "Attorneys' Eyes Only" information shall be designated "Attorneys' Eyes Only."   Witnesses shown "Attorneys' Eyes Only" documents shall not be allowed to retain copies.

11. Any "Attorneys' Eyes Only" information and documents or any pleading, brief, or other paper disclosing "Attorneys' Eyes Only" information may only be filed with the Court by initially filing it in a sealed envelope marked with the case caption and the following caption:

> **Confidential.  This envelope contains documents subject to a Protective Order of the Court.  Its contents are not to be revealed to anyone except the Court, or with prior written consent of counsel for the parties herein, or pursuant to order of this Court.  If the contents of this envelope are so revealed, they shall thereafter be resealed.**

A separate redacted copy of any such pleading, brief, or other paper disclosing "Attorneys' Eyes Only" designated information where such information has been redacted will be filed.

12. Any "Attorneys' Eyes Only" information and documents or any pleading, brief, or other paper disclosing "Attorneys' Eyes Only" information filed in accordance with Paragraph 11, shall remain under seal for thirty (30) days.  At the expiration of that time, the

information, documents, pleading, brief, or other paper so sealed shall be unsealed, unless a motion to seal regarding those documents has been filed by any party.  If a motion to seal has been filed, the documents so sealed shall remain sealed until the Court issues its ruling on the motion to seal.  If denied, the documents will be unsealed at the entry of that order. If granted, the documents will remain sealed consistent with the order granting the motion to seal.

13. All "Attorneys' Eyes Only" information and materials produced shall be maintained by each party and/or its representatives in such a matter as to avoid disclosure to individuals or entities not expressly authorized to access such information by virtue of this Order. "Attorneys' Eyes Only" documents or designations shall not be used for any commercial, competitive, personal, or any other purpose other than this litigation.

14. Nothing herein shall be deemed to waive any applicable privilege or work product protection, or to affect the ability of a Producing Party to seek relief for an inadvertent disclosure of material protected by privilege or work product protection.

15. Nothing in this Order precludes any Producing Party from objecting to the production of sensitive documents and materials that contain personal information of a confidential nature regarding non-party persons or witnesses on any ground permissible under law and requiring that the requesting party obtain a court order granting production of said documents should the Court deem such production appropriate over a party's objection. This Order shall not be deemed or interpreted as providing parties blanket access to any Producing Party's records.

16. Nothing in this Order affects the admissibility or inadmissibility of any record marked as "Attorneys' Eyes Only."  This Order does not pertain to the use of any documents or

deposition designations marked as "Attorneys' Eyes Only" at trial.  The use of "Attorneys' Eyes Only" documents or deposition designations at trial shall governed by the trial court. Nevertheless, any party that plans to use such documents at trial shall give the Producing Party timely notice in writing at least thirty (30) days prior to trial of said intended use and permit the Producing Party the opportunity to request that the Court take steps to protect and/or address the sensitive information to be disclosed as the trial Court deems fit.

17. The provisions of this Order will not terminate at the conclusion of this litigation. Following the conclusion of this litigation, documents or deposition transcripts containing "Attorneys' Eyes Only" information, and all copies of same, will within 30 days be either: (1) returned to the attorneys for the Producing Party; or (2) destroyed.  All costs related to administer either the return or destruction of the information/material shall be borne by the party that received the disclosure from the Producing Party.

18. This Order may be modified or amended by order of the Court for good cause shown.

   **IT IS SO ORDERED.**

   April 20, 2020


   **Lanny King, Magistrate Judge**
   **United States District Court**


c:      Counsel of Record